## STANLEY WOODWARD v. DEL. L. & W. R. CO.

ERROR TO THE COURT OF COMMON PLEAS OF LUZERNE COUNTY.

Argued April 13, 1888—Decided October 1, 1888.

By a perpetual mining lease made in 1872, in which the lessors " granted, demised, leased, and to use and mine let " all the coal under the premises described, with certain surface rights, at a certain rate per ton of coal mined, a minimum number of tons to be paid for each year, mined or not, it was provided that the lessees should pay all taxes upon the surface occupied by them, and that the lessors should pay all taxes upon the coal in the ground.

. In 1883, a portion of the surface was conveyed to the lessees, in fee, with a provision in the deed that it should in no way affect their interest in and title to the coal under the lease of 1872, nor the rights of either party under the provisions of said lease, which were to remain as if the said conveyance had not been made.

Statement of Facts.

*Held:* that although under the lease the lessees had become the owners of the coal beneath the surface afterward conveyed to them: Sanderson v. Scranton, 105 Pa. 469; Del. etc. R. Co. v. Sanderson, 109 Pa, 583; yet the liability of the lessors to pay the taxes imposed upon the coal in place remained after the surface deed as under the contract relation created by the lease.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 382 January Term 1888, Sup. Ct.; court below, No. 236 January Term 1888, C. P.

On December 31, 1887, a case stated was filed wherein Stanley Woodward, George .A. Woodward, John K. Woodward, Charles F. Woodward, and Theodore Strong, were plaintiffs, and The Delaware, Lackawanna and Western R. Co. was defendant, and wherein it was agreed:

1. By contract in writing dated August 29, 1872, and recorded in the office for recording deeds, etc., for the county of Luzerne, in Deed-book No. 162, page 54, etc., a copy of which contract is herewith submitted to the court as part of this case stated, Stanley Woodward and J. Pryor Williamson, parties of the first part, G. M. Reynolds and others, parties of the second part, "granted, demised, leased, and to use and mine let" to said The D. L. & W. R. Co. party of the third part, all the coal under the premises therein described, together with certain surface rights as therein set forth, the said company to pay for said coal at the rate of twenty-five cents per ton in quarterly instalments, at the times and in manner, etc., in said contract specified.

2. That prior to April 1, 1883, all the right, title, and interest of said Stanley Woodward and J. Pryor Williamson, in and to said above-recited contract, as well as any right, title, and interest then yet remaining in them, in and to the premises therein described, became duly vested in the above-named plaintiffs.

3. That by deeds dated May 18, 1883, and April 24, 1883, and recorded in said county of Luzerne, in Deed-book No. 235, page 559, etc., in Deed-book No. 238, page 48, etc. (which deeds are made a part of this case stated), the said plaintiffs granted and conveyed to the said defendant about one hundred and twenty-five and one half acres, part of the surface overlying

the coal embraced in said contract of August 29, 1872, in each of which said deeds it is provided as follows, viz.: "It is understood and agreed that this deed by which the parties of the first part convey their right, title, and interest in and to the surface of the above-described tract of land only, shall in no way affect their interest in and title to the coal underlying the same and embraced in that certain indenture of lease made and executed by Stanley Woodward and James Pryor Williamson to the said D. L. & W. R. Co. dated August 29, 1872, and recorded in the recorder's office in Luzerne county, in Deed-book No. 162, page 54, etc., nor shall this conveyance affect in any way the right of either of the parties hereto in and under the provisions of the said lease, but the same shall remain in full force and effect so far as the same relates to the coal in and under the said tract of land, notwithstanding this convey-ance of the surface thereof."

4. That in and by said instrument of writing of August 29, 1872, first herein recited, it is among other things further pro-vided " that the said party of the third part (the aforesaid defendant) shall pay all taxes which may be imposed upon the surface of that portion of said lands occupied by them, and upon the improvements by them made thereon, and upon the coal or the transportation thereof after it is mined, and the said parties of the first part and second part shall pay all the taxes imposed upon the coal in the ground and upon the sur-face not occupied by the party of the third part."

5. That after the conveyance of surface in 1883, as herein-before stated, and prior to 1885, the coal in the ground and the surface were separately assessed, and for the year 1885 the assessment of the coal in the ground was made to defendant without notice, and defendant did not discover the fact until bill for taxes was presented, whereupon the defendant gave notice to plaintiffs, and the taxes for that year (1885) were paid by the plaintiffs as hereinafter stated, and for the year 1886 the assessment of the coal in the ground was, at the request of defendant, actually made by the county commis-sioners to the plaintiffs, and afterwards, upon the demand of the plaintiffs, the said assessment was changed by the commis-sioners from said plaintiffs to said defendant company, the defendant company protesting against said change. The coal

and surface of the said premises were thus for the years 1885 and 1886 assessed together as coal and surface to the said defendant at a single valuation, and no assessment of the coal in the ground alone as distinct from the surface was finally made to any one, this being done against the protest and without the consent of the defendant.

6. While plaintiffs protest that the fact is immaterial and irrelevant to this case, it is nevertheless agreed that the average assessment of surface in the borough and township in which said premises are situate, was thirty dollars per acre for the years 1885 and 1886, and the average assessment of coal in the ground in same place, and for same years, was $120 per acre, and at those rates of assessment or valuation the taxes on the coal in the ground underlying said one hundred and twenty-five and one half acres, for 1885 amounted to the sum of $263.58, and for 1886 to the sum of $390.80.

7. That the defendant claimed that of the taxes levied on said coal in the ground and surface for the year 1885, the sum of $263.58 was the proportion that ought to be borne by the coal in the ground, and demanded that the same should be paid by the plaintiffs, and therefore notified the plaintiffs that in case of refusal by them and payment thereof by defendant, the latter would deduct the amount from the next instalment payable to plaintiffs under the aforesaid instrument in writing of August 29, 1872. That thereupon the said amount was paid by the plaintiffs under protest and a disclaimer of liability.

8. That of the taxes levied for the year 1886 on said coal and surface, the defendant claimed that the sum of $390.80 was the proportion that ought to be borne by the coal in the ground and paid by the plaintiffs, of which claim the plaintiffs were notified by the defendant, but the same was in fact paid by the defendant, and the amount therefor deducted and retained from the instalment claimed by the plaintiffs to be due the plaintiffs for the quarter ending the first day of October, 1886.

If, therefore, the court shall be of the opinion that the plaintiffs are entitled to recover, in this action, the amount so paid by them for said taxes on the coal in the ground in 1885, and the amount retained by defendant on account of the taxes on the coal in the ground in 1886, the judgment to be entered

in favor of the plaintiffs and against the defendant for $654.38, with interest on $263.58 thereof from October 1, 1885, and on $390.80 thereof from October 1, 1886; but if the court shall be of the opinion that the plaintiffs are entitled to recover only in a single amount, then judgment to be entered for such one of said amounts; and if the court shall be of opinion that the said plaintiffs are not entitled to recover for either of said amounts, then judgment to be entered in favor of the defendant and against the plaintiffs. Costs to follow the judgment of the court. Either party to be entitled to sue out a writ of error to the judgment that shall be entered by the court.

The granting clause of the said mining lease, made a part of the case stated, was as follows : " Have granted, demised, leased, and to use and mine let, and by these presents do grant, demise, lease, and to use and mine let, unto the said party of the third part, their successors and assigns, all the coal situate, lying and being upon, in and under all of the above described lands, with the right to enter into and upon the said lands and mine, obtain, break, screen, prepare, take away and dispose of said coal, for the sole use and benefit of the said party of the third part, their successors and assigns, in such way and manner as they shall think proper." Other provisions of the lease, especially the eleventh section by which alone was it determinable, sufficiently appear in the opinion of the court below : 

On February 24, 1888, the court, DREHER, P. J., 43d judicial district, presiding, filed the following opinion :

The indenture, called a mining lease, of August 29, 1872, inter alia, provides that the company may use, without charge therefor, the coal required in obtaining and preparing for market the coal mined, and that no account is to be kept or charge made for any of the coal mined, except that which is loaded into cars for transportation to market, and that which they may sell to miners and others at the mines. Also, that the plaintiffs may at any time inspect the workings of the mines by a mining engineer, to see that they are worked with a due regard to their interests ; and also that, in order to ascertain the amount of coal mined, they may, at all reasonable and proper times, examine the books and accounts of the company, etc. And

under the head, "And the parties hereto do hereby mutually agree," the clause marked "Eleventh" is as follows:

" That in case of the failure of said party of the third part to make any of the payments for said coal hereinbefore by them agreed to be made, within ninety days from the time when the same, according to the terms of this indenture, shall become due and payable, then and in that case this present indenture of lease, and the estate and rights hereby granted, and all and singular the covenants, agreements and undertakings of all the said parties of the first, second and third parts, hereinbefore contained, shall be and become null and void and of no effect; but the said party of the third part shall thereby forfeit to the said parties of the first and second parts all of the improvements which they shall have made upon the hereinbefore demised property, and shall surrender to the said parties of the first and second parts the possession of the said lands and property, and of the improvements thereon, and shall pay for any coal they may have taken from said lands; whereupon all the rights and liberties of all the parties hereto under this indenture shall cease."

The case as stated does not inform us how the coal was assessed prior to 1883, but it was said, at the argument, that the land was assessed including the coal, as a whole, at a single valuation; indeed, it is now said by plaintiffs that the statement in the fifth paragraph of the case stated, that after the conveyance of the surface in 1883, and prior to 1885, the coal in the ground, and the surface, were separately assessed, is a mistake, though the defendant says it is correct; and there is nothing in the case showing who paid the taxes on the coal in the ground prior to 1885. Of course, we must take the facts as we have them in the case as made by the parties; but it is, I think, of little, if any, importance who paid the taxes or how the property was assessed prior to 1885. There is no contention between the parties as to those taxes, and no doubt they were satisfactorily adjusted.

It is conceded that the legal effect of the contract of August 29, 1872, called a mining lease, under the decisions of the Supreme Court in Sanderson v. Scranton, 105 Pa. 469, and Del. etc. R. Co. v. Sanderson, 109 Pa. 583, was a sale of the coal in place, and was such a severance of the surface from the sub-

stratum that the coal in the ground should be assessed separately from the surface, and the several owners, in the absence of any contract between them controlling the matter, would be liable for the taxes on their respective properties. By the terms of the contract the plaintiffs agreed to pay all the taxes that might be imposed upon the coal in the ground, and therefore it was a matter of indifference to them, so long as they continued to own the surface, whether the coal in the ground was separately assessed or not. Being bound as between themselves and the defendant to pay the taxes, the assessment of the coal in the ground separate from the surface would not have relieved the plaintiffs from their contract obligation to the defendant.

In Sanderson v. Scranton, supra, Sanderson by agreement very similar to the one involved in the present case, leased to Jermyn, whose interest subsequently became vested in the D., L. & W. R. C., all the coal beneath the surface of a tract of land. The city authorities of Scranton caused the coal and the surface to be assessed separately, as the property of Sanderson. Sanderson resisted the collection of the tax on the coal in the ground, contending that the agreement with Jermyn operated as a sale or assignment of all the coal, and not merely of that mined. By the agreement, Jermyn was to pay all government imposts, United States, state, county, and local taxes upon the coal mined. The court below held that the agreement did not operate as a sale of the coal in place, and entered judgment in favor of the city. The Supreme Court reversed this judgment, holding that the agreement was a sale of the coal, and that it must be assessed to the owner, the D., L. & W. R. Co. The question came up again in Del. etc. R. Co. v. Sanderson, 109 Pa. 583, in which case the company sought to recover from Sanderson the taxes paid by the company, assessed on the coal in the ground, and the Supreme Court adhered to their former decision. It is contended by the plaintiffs that those cases and the case of City of Scranton v. Gilbert, 16 W. N. 28, rule the present case; that, as by the contract of August 29, 1872, the railroad company became the owner of the coal in the ground, and by the conveyances in 1883 the surface was conveyed, the two estates or interests became united, and as the company is now the owner of the surface, and the underlying coal both, it is liable for the taxes; that the property

as a whole must be assessed to the company as land, and, as held in the City of Scranton v. Gilbert, supra, the coal cannot be separately valued and assessed. This position of the plaintiffs is certainly correct, unless there is such a contract relation between the parties as to take the case out of the general rule. I think it is beyond question that under the indenture of August 29, 1872, though that was a sale of the coal in place, the plaintiffs were bound to pay the taxes on it, for the very simple reason that they agreed to pay them. Whether the coal and surface were assessed at a single valuation to the plaintiffs, or the coal was separately assessed to the defendant, would make no difference. The form of assessment by the assessors and commissioners could not affect the contract between the parties. In Sanderson v. Scranton, and Del. etc. R. Co. v. Sanderson, there was no contract stipulation in regard to the taxes on the coal in the ground, only as to the coal mined; and of course the taxes were properly assessed to, and must be paid by the owner of the coal. If Sanderson had agreed, as the plaintiffs here have, to pay all the taxes that might be imposed upon the coal in the ground, I take it, the Supreme Court would have held him to his contract.

The question remains, whether the plaintiffs have been relieved from their contract obligation, created by the contract of August 29, 1872, by the operation of the conveyance of the surface of the land in 1883; and the solution of this question must be found in the following clause, contained in the latter conveyance, viz.:

"It is understood and agreed that this deed, by which the parties of the first part convey their right, title, and interest in and to the surface of the above described tract of land only, shall in no way affect their interest in and title to the coal underlying the same, and embraced in that certain indenture of lease made and executed by Stanley Woodward and James Pryor Williamson to the said D. L. & W. R. Co., dated August 29, 1872, and recorded in the recorder's office in Luzerne county, in deed book No. 162, page 54, etc.: nor shall this conveyance affect, in any way, the right of either of the parties hereto, in and under the provisions of the said lease; but the same shall remain in full force and effect, so far as the same relates to the coal in and under the said tract of land, notwithstanding this conveyance of the surface thereof."

The conveyance of the surface shall not in any way affect the rights of the defendant (either party) under the lease (indenture) of 1872; but the same (the lease or indenture of 1872) shall remain in full force and effect, so far as the same relates to the coal in the ground. It seems to me, it would be difficult, by any form of expression, to more clearly and plainly declare the intention of the parties to retain their relations and rights as respects the coal in the ground, as defined in the contract of 1872; and that the conveyance of 1883 should not, in any respect, work a change in their respective rights and obligations as regards such coal.

Now, it is the right of the defendant, under the contract of 1872, to have the coal in the ground, at the royalty of twenty-five cents per ton, free of taxes; for the stipulation that the plaintiffs shall pay all the taxes, is equivalent to saying that the defendants shall have such coal free from taxes. But it is said that where the surface and the underlying coal are owned by the same person, the land and coal must be assessed as a whole in a single valuation: Scranton v. Gilbert, supra; and therefore as the defendant is now the owner of both surface and coal, no tax can be imposed upon the coal as coal. In Scranton v. Gilbert, the question was between the owner and the taxing authorities. There was not involved a question between the owner and some one else who stood in a contract relation to the owner, involving the liability of such third party to pay the taxes on the coal.

In the case in hand it appears that in the township where this land is situated, the coal in the ground is valued by the acre, and the surface is also valued by the acre, in making the assessments; and if there be a single valuation where the surface and coal are assessed together as a whole, the proportion of taxes that should be borne by the coal and the surface respectively is a matter of easy calculation. Id certum est, quod certum reddi potest. But, it has not been decided that where one man, for a valuable consideration, puts himself in such contract relation with another, in respect to that other's land, by which he is to pay the taxes imposed upon it, that the land may not be assessed to him. I think where a tenant, for instance, agrees to pay all the taxes that may be imposed upon the demised premises during the term, an assess-

ment of the premises to him would be a good and valid assess-
ment, and the taxes could be collected from him, and if he
failed to pay, the taxes would be a lien on the land, and why
may not the coal in the present instance be assessed to the
plaintiffs? It seems to me, the plaintiffs being liable to pay
the taxes under their contract with the defendant, there would
be no impropriety in assessing the coal to them. Who could
complain? The plaintiffs? What would they have to com-
plain of? They would only be required to do what they
agreed to do. The defendant would not complain. It is said,
however, that where the surface and coal are owned by the
same person, they cannot be separately assessed. That is so,
where the owner has not *by contract* imposed the payment of
the taxes on the coal upon some one else. True, perhaps, the
taxing authorities could not be compelled to assess the coal
and surface separately where there has not been an actual
severance by sale, but where parties, as here, have by their
contract, so far as taxation or payment of taxes is involved,
virtually severed the surface from the underlying coal, why may
not the assessment be in accordance with that contract? But,
if the equities of the parties under their contract cannot be
worked out through the taxing authorities, in the form of the
assessment, the contract should be enforced in some other form
of remedy, if, as in the case in hand, the proportion of the tax
which should be borne by the coal may be ascertained.

It is said in argument that when the contract of August 29,
1872, and the conveyance in 1883, of the surface, were made,
all parties supposed the plaintiffs were still the owners of the
coal in place; and not until the judgment in Sanderson v.
Scranton was announced, did any one suppose that the lease
of 1872 operated as a sale of the coal in the ground; and that
the stipulation for payment of taxes was entered into upon the
theory that the plaintiffs owned the coal. Grant this, how
does it in any way change the liability or interest of the plaint-
iff ? They still receive their royalty, the same as if they were
the technical owners of the coal. The royalty is in no way
diminished, the defendant being bound to pay for the minimum
quantity named in the contract, annually, whether mined or
not; and the clause of forfeiture on non-payment of royalty re-
mains intact, and when the coal shall be all mined, I take it,

the substratum will revert to the plaintiff. They sold only the coal, and if any other valuable mineral should be discovered in this substratum, it would belong to the plaintiffs, unless there be something in the deed conveying the surface to change this result. The plaintiffs still have their interest in the coal, to the extent of the royalty to be paid them, and this is all they would have if the contract of 1872 was technically a lease, as it was supposed to be when entered into.

I am of opinion that the plaintiffs are not entitled to recover any of the taxes for the years 1885 and 1886.

Judgment having been entered in favor of the defendant, as ordered, the plaintiffs took this writ and assigned the entry of judgment as error.

*Mr. Henry M. Hoyt* (with him *Mr. J. B. Woodward* and *Mr. George R. Bedford*), for the plaintiffs in error:

1. A contract is to be made and construed with reference to the time when it was made, and to contemporary laws and usages. When there is nothing in the agreement to exclude the inference, the parties are always presumed to contract in view of the usage or custom which prevails in the particular trade or business to which the contract relates, and the usage is admissible for the purpose of ascertaining with greater certainty what was intended by the parties: Hinton v. Locke, 5 Hill, 437 ; 2 Parsons on Contracts, 499, 540 ; 2 Story on Contracts, § 456 ; Barnhart v. Riddle, 29 Pa. 96; Case v. Cushman, 3 W. & S. 546 ; Van Ness v. Packard, 2 Pet. 148; Lacy v. Green, 84 Pa. 518 ; Brown v. Brooks, 25 Pa. 213. "The law in existence at the time a contract was made, enters into and necessarily forms a part of it . . . . . and is the essential and true exponent of the intention of the party making it : " Lewis, C. J., in Mercer Co. v. Railroad Co., 27 Pa. 400; Callen v. Hilty, 14 Pa. 288 ; Bickford v. Cooper, 41 Pa. 142; Williamson v. McClure, 37 Pa. 402; Allison's App., 77 Pa. 221 ; Aldridge v. Eshleman, 46 Pa. 426 ; Est. North Am. Land Co., 60 Pa. 247.

2. In 1872, when this lease was made, not only had this court not made any deliverance on the legal estate created by it, or such as it, but no lawyer or layman and no practical business man, had ever contracted, except on the theory that

coal in the ground belonged to the lessor. It was not then believed that the lessee had any possession of the coal, except that actually exposed and being worked. The length and breadth, then, of the covenant of the lessors was this: They agreed to pay " all the taxes upon the coal in the ground " not occupied by the lessee, " and upon the surface not occupied " by the lessee. In 1883, by the deeds of April 1st and May 18th, the lessee became the owner and occupier of the surface, and liable for the taxes upon it. In 1884, by the decision of this court in Sanderson v. Scranton, 105 Pa. 469, it became known, for the first time, that the lessee was the owner of the coal in the ground, and, as matter of law, in the occupation or possession and liable for the taxes upon it. When the plaintiffs ceased to be the owners of the coal in the ground, their liability to pay the taxes upon it ceased.

3. By the terms of the indenture, the ownership of the mineral therein described is vested in the grantee ; he is entitled to the benefits and is subject to the burdens incident to its ownership: Del. etc. R. Co. v. Sanderson, 109 Pa. 591. There can only be divided taxation when there is divided ownership: Logan v. Washington County, 29 Pa. 373 ; it follows, that the purchasers of the coal in place must pay the taxes upon it. If then, the plaintiffs are not the owners of the coal in place, and are bound by the decision of this court in 1885: Del. etc. R. Co. v. Sanderson, supra, neither can they be taxed for it, nor be made liable for taxes on it, for, since the surface deeds of 1883, none could be assessed against them. "If the title to the surface and to the coal be owned by one person, they cannot be separately valued and separately assessed ; when thus owned they are indivisible parts of the land for all purposes: Scranton v. Gilbert, 16 W. N. 29. The defendants having accepted the deed for the surface, they are estopped from denying their liability to the additional taxation cast upon them by the law in consequence of their surface ownership.

*Mr. A. H. McClintock* and *Mr. Henry W. Palmer*, for the defendant in error:

1. Of necessity the rule has always been, and must always be, that all persons are presumed to know the law. If parties contract with a certain law in view and in force, and that law

is afterwards changed or repealed, effecting results hurtful to either party, it may be that relief could be had on the ground that the contract should be governed by the law in existence when it was made; but, in this case, it is to be observed that no change has taken place in the law. Since the contract, this court has declared the law to be different from what plaintiffs supposed it to be. A mistake of law is no ground for relief: Munser's Case, 2 Co. b.; 1 Story, Eq. J., 137; Peters v. Florence, 38 Pa. 194. A contract which the parties intended to make, but did not make, cannot be set up in the place of one which they did make, but did not intend to make: 2 Parsons on Contracts, 9*.

2. Nothing can be added to the argument of the court below, upon the subject of the right of the defendant, under the contract of 1872, to have the coal in the ground at the royalty of 25 cts. per ton, free of taxes, notwithstanding the surface deeds of 1883. Our position is, that there is nothing in those deeds which changes the contract relations of the parties, by which the lessors are to pay the taxes on the coal in the ground.

OPINION, MR. JUSTICE GREEN:

We do not think it possible to misunderstand the meaning of the fifth clause of the lease in question in this case. It contains an absolute engagement on the part of the lessors to pay all the taxes imposed upon coal in the ground. The language is explicitly to that effect. It is therefore unnecessary to consider the applicability of rules and decisions which are designed to assist in the interpretation of written instruments. They are intended for doubtful cases. Here the meaning is plain. No matter how, or when, or by what means, or in what manner, taxes might be imposed upon the coal in the ground upon these premises, the lessors were to pay them, the lessees were not to pay them. The validity of such a compact is not at all questioned; its binding obligation according to its literal terms no one doubts. By the deeds of 1883 it was carefully and specially covenanted that the conveyance of the surface thereby made should in no way affect the interest of the lessors in, and title to, the coal underlying the same, nor should it affect in any way the right of either of the parties in and under the provisions of the lease, "but the same shall remain in

full force and effect so far as the same relates to the coal in and under the said tract of land, notwithstanding this conveyance of the surface thereof." It would, therefore, be a positive violation of the terms of the deeds of 1883 to permit them to effect any change whatever in the rights of either of the parties under the lease of 1872. Those deeds must, by consequence, be discarded in the consideration of the· question at issue which arises under the lease.

It must further be noted that the parties do not differ at all as to the·obligation to pay these particular taxes at any time· prior to the origination of the present contention. We cannot think it material to regard the technical question whether the taxing authorities are at liberty to assess separately the surface and the underlying coal. That is a result purely of the union of the titles, and while it may affect the right of the taxing power to make independent assessments, it does not deprive that power of the right to impose taxation upon the coal in the ground. The right may have to be exercised by joining the coal with the surface in making the assessment, but the coal is, nevertheless, taxed, and its payment becomes the duty of somebody quite as effectively as though the surface and the coal were separately assessed. Now, the only question here, as it seems to us, is upon whom, as between the parties to this contention, does that duty devolve. It certainly rests upon one or the other. If prior to the deeds of 1883, it rested upon the lessors and if now, since those deeds, and by virtue of them, it rests upon the lessees, then those deeds do change the rights of the parties under the lease. But that cannot be, because those deeds, in terms, prohibit any such result. How then can the change of liability be accomplished? Because, it is said, since the lease was made, and many years after its stipulations were literally performed, a decision of this court was made which affected the legal status of the parties, so that the lessors must be treated as having sold the coal and as being no longer the owners of it. Supposing this to be true in all respects, for what reason ought it to affect the question as to who should pay the taxes on the coal in the ground. Under the lease of 1872, regarded simply as a lease, the lessees had the exclusive privilege to take all the coal upon payment for it according to the stipulations. As long as they continued to

mine the coal and pay for it, this privilege continued. Its exercise excluded the lessors from every interest in the coal except the right to exact and receive the price to be paid and that right ceased only when the coal was exhausted. If the payments ceased, the right of the lessees to take the coal ceased also, and the lessors resumed title and possession of that which remained. Under our decision in the Sanderson case the obligation of the lessees, and the right of the lessors are precisely the same. The lessees have the right to take the coal precisely as they had it under the lease. They are subject to exactly the same duties as under the lease. In fact it is still the lease and that alone which determines what that right and those duties are. So long as the coal is mined and paid for according to the stipulations of the lease, the exclusive right to take the coal continues. When the payments cease, the right to take the coal ceases, and the full right of the lessors to resume title and possession reverts to the lessors with as complete force and effect in every possible respect as if the decision in the Sanderson case had never been made. Every advantage, every beneficial interest, which the lessors held under the lease they still hold, and we can perceive no reason why they should not hold them upon the identical terms which the lease established.

Let it be granted, that if the lease had said nothing in regard to the payment of the taxes upon the coal in the ground, the obligation to pay them would have followed the technical ownership, it boots nothing as against the positive agreement of the lessors to pay them. That agreement was not made to depend upon any technical aspect of the interest of the lessors in the coal. It was absolute, peremptory and without condition. In every matter of substance that interest is unchanged, certainly in every pecuniary respect. But to impose the duty of paying these taxes upon the lessees, is changing the contract, putting upon them a pecuniary obligation which they not only never assumed, but which they required should be discharged by the lessors. And this would result not on account of anything they have done or omitted to do, but simply because the law declares that the contract between the parties must be regarded as a sale instead of a lease. Not that any of its terms are changed but rather its name. In certain respects,

of course, the difference of interest between a sale and a lease under this contract, may become important. But these are peculiar to the lessors and those claiming under them and with them the lessees have no concern. So far as the question of the taxes is concerned, we can see no difference in the relations of these parties. We agree entirely with the learned court below in the conclusions reached by them, and in the reasoning by which those conclusions are supported. We cannot know, and have no right to assume, that if at the time the lease was made the parties had known that the contract would be held by the courts to be a sale instead of a lease, any different provision would have been made in regard to the payment of these taxes. This being so we would be entirely without warrant if we made a change in the contract in that respect.

Judgment affirmed.